[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This action for dissolution of marriage was brought to this court on November 19, 1993. The final hearing began on July 12, 1995 and was continued to and completed on August 23, 1995.
The parties were married in Dillon, South Carolina on July 23, 1974. They went through a second marriage ceremony in Norwalk, Connecticut on July 23, 1977 although there was no intervening marriage dissolution. There was no issue of the marriage. The parties have resided continuously in the State of Connecticut for at least one year prior to the filing of the complaint. Therefore, the court has jurisdiction.
The court finds the following additional facts. When the parties were married in South Carolina the defendant was CT Page 10611 receiving public assistance for her support and that of her three children from her earlier marriage to Herbert J. Arsenault. The defendant did not notify the State of Connecticut that she had changed her marital status until just before the second marriage ceremony. Thus the parties had the benefit of state aid for the first three years of the marriage, a fact of which the plaintiff was aware.
The plaintiff husband was 49 years of age and the defendant wife 52 at the time of the final hearing. The plaintiff appears in good health although he has crushed vertebrae, a neck injury and a pinched nerve. He may undergo surgery to alleviate these conditions at a future date. The defendant's health is good although she has had unspecified health problems in the last few years.
The plaintiff had to leave school after the seventh grade because he sharecropped cotton and tobacco in South Carolina. He cannot read and writes very little. He was married and divorced prior to this marriage and had a son of that union and paid child support during this marriage. His son lived with the parties for two weeks before the defendant "threw him out" after an argument. The defendant's three children were residing with their maternal grandmother at the time of the South Carolina marriage and moved in with the parties at a later date.
The parties met in a Norwalk bar where the defendant waitressed and the plaintiff worked in the kitchen. The plaintiff has worked at various jobs throughout his life, although he has been unemployed at some periods. At one time he started his own landscaping business. He then began to work in the swimming pool field and eventually bought a 25% interest in McCormicks Pools. He remains one of four owners of this business which provides seasonal work. He invested $15,000 cash into the business and is co-signer on a note in the amount of $400,000 which is due on July 1, 2000. The business pays the loan in the amount of $3388.04 per month with a balloon payment due at maturity. Should the plaintiff wish to transfer any part of his 25% interest he must first offer it to the other owners. He is the Service Manager for the company and works on repairing, remodeling, installing, and cleaning pools as well as quoting prices to new customers. His adjusted gross income is $24,300 per year. Between October and March be receives unemployment compensation in the amount of $276 per week. He also does occasional side jobs. He reported adjusted gross income of CT Page 10612 $24,300 in 1993 and expects that sum to be the same in 1995. The court finds that he has a gross earning capacity of approximately $27,500 per year.
The defendant continued worked throughout the marriage, at one time holding three part-time jobs. In 1978 or 1979 she started a ceramics business called "Loving Hands". The parties obtained a loan for $20,000 in 1979 to buy out her partner. The defendant paid the loan through her earnings. Eventually she found herself putting too much money back into the business to make this line of work economically feasible. She has not, however, sold the business, and still owns kilns and other supplies. She has worked at Sears and J.C. Penney. At the time of trial she was a school bus driver during school months and a dog catcher for the Town of Bethel. She earns $538.92 per week as a bus driver for nine months of the year. She collects unemployment for three months. She earns approximately $105 per week as dog catcher.
Throughout the marriage, the parties lived from paycheck to paycheck, the plaintiff turning his over to the defendant to pay bills. The defendant used credit cards to buy home furnishings, clothes and other items, many of which were used in the home.
When the parties married they resided in the defendant's rented quarters in Norwalk. They lived in various rented quarters until July 1984 when they were able to purchase the home they were renting in Bethel. When their landlord disappeared, they negotiated with the bank mortgage holder to pay $200 per month in excess to their monthly rent to accumulate a down payment of $2400. They then obtained a mortgage from Danbury Savings and Loan Association in 1984 for $71,200. They improved the home to include a separate apartment for the defendant's daughter. The plaintiff did much of the remodelling work. They purchased appliances with their Sears credit card. They refinanced the home on April 26, 1990 to pay credit card debt.
In 1986 the defendant filed for divorce but did not pursue the action. Nevertheless, the marriage worsened. The parties did not communicate well and were saddled with debt. The plaintiff was unfaithful. On one occasion he broke a rifle over the defendant's head in an argument over another woman. In September 1993, the defendant obtained a Restraining Order for Relief from Abuse although none had occurred; she had called the police when the plaintiff pushed against an entry door she had barricaded CT Page 10613 with a chair because she feared physical abuse. On balance, the court finds that neither party is more at fault than the other for the breakdown of the marriage. The marriage has broken down irretrievably.
The sole issues at trial concerned the allocation of debt and marital property. While the plaintiff may never have "used" the credit cards, the court finds that many purchases were for household items and clothing. The defendant, however, used the credit cards more freely than was reasonable in the parties' financial situation. The court finds that the accepting of welfare under false pretenses caused a credibility problem for both parties. The defendant's credibility was further weakened because of her unconvincing, evasive and self-serving answers. This was especially apparent in the testimony regarding the kilns and other items used in her ceramics class which she disbursed to her friends.
The court has had the opportunity to observe the demeanor of the parties and has reviewed the exhibits of the parties in the case.
In addition, the court has carefully considered the statutory criteria set forth in sections 46b-81 and46b-82 of the General Statutes in reaching the decisions reflected in the orders that follow:
1. The marriage of the parties is dissolved on the grounds of irretrievable breakdown.
2. (a) The plaintiff shall pay the sum of $645 per month to the defendant as and for alimony until the sale of the marital residence.
(b) (On the final day of the hearing, plaintiff's counsel informed the court that the Assistant Attorney General had filed an appearance in this matter after the court had continued the case for notice to the Attorney General. Counsel also reported that the Assistant Attorney General was unable to be in court on that date but that he requested that the court order that alimony be paid in the amount of $1 per year for a period of time.) Upon the sale of the marital residence, the plaintiff shall pay to the defendant the sum of $1 per year until the earliest of the following events to occur: her death, her remarriage or cohabitation with an unrelated male, or five years from the date of this decision. CT Page 10614
(c) The plaintiff is in arrears in the sum of $1400 in the payment of pendente lite alimony through August 23, 1995. That sum, if not sooner paid, is to be paid from his share of the proceeds from the sale of the marital residence.
3. (a) The marital residence shall be placed on the market at a listing price agreed upon by the parties. It shall be listed with a licensed real estate broker no later than thirty (30) days from the date of this decision.
(b) The defendant shall have exclusive possession of the marital residence until it is sold. She shall be responsible for paying the mortgages, taxes, insurance and utilities in connection with said residence until it is sold.
(c) Any fix-up expenses to make the house marketable must be agreed upon between the parties after consultation with the broker. The parties shall share equally in the cost of such fix-up expenses.
(d) Until the property is sold, the parties shall share equally in the cost of any necessary repairs in excess of $200. The defendant shall pay the first two hundred (200) dollars of said repair expenses.
(e) When the house is sold and after the payment of the mortgages, real estate taxes, broker's commissions, attorney's fees and usual closing costs, the net proceeds shall be divided equally between the parties.
(f) The court shall retain jurisdiction over any disputes in connection with the sale of the real estate.
4. The plaintiff shall retain his percentage ownership of McCormick Pools. The defendant shall retain any interest she may have in those assets associated with "Loving Hands."
5. The plaintiff shall be responsible for the liabilities listed on his financial affidavit. The defendant shall be responsible for the liabilities listed on her financial affidavit, dated August 23, 1995. The exception is that the defendant shall be responsible for two-thirds (2/3) of the debt to Sears, and the plaintiff shall be responsible for one-third (1/3) of the Sears debt as that debt existed on August 23, 1995. CT Page 10615
6. Each party shall be responsible for his/her attorney's fees.
7. Each party shall retain those items of personal property he or she has in his or her possession.
8. The defendant shall be eligible to remain covered by the plaintiff's medical insurance at her own expense. She shall notify him immediately in the event she secures other coverage. The provisions of this paragraph shall be governed by General Statutes, Sec. 38a-538.
9. The plaintiff shall maintain life insurance for the benefit of the defendant until the sale of the marital residence.
10. The defendant shall hold the plaintiff harmless against any liability arising from an incident wherein a dog in her care bit a child.
11. All other claims for relief not addressed herein have been rejected.
Judgment may enter accordingly.
Leheny, J.